UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VALLEY MEAT COMPANY, LLC**<br>3845 Cedarvale Rd<br>Roswell, NM 88203<br><br>           Plaintiff,<br>     v.<br><br>**TOM VILSACK, Secretary,**<br>U.S. Department of Agriculture<br>1400 Independence Ave., S.W.<br>Washington, DC 20250,<br><br>**AL ALMANZA, Administrator,**<br>Food Safety and Inspection Service<br>U.S. Department of Agriculture<br>1400 Independence Ave., S.W., Room 331-E<br>Washington, DC 20250,<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This action challenges the United States Department of Agriculture's ("USDA") recent failure to provide inspections for horses for human consumption. USDA is directed to provide inspections of red meat for human consumption including equine species pursuant to the Federal Meat Inspection Act, 21 U.S.C. 301 *et seq*. ("FMIA") and has failed to do so in contravention of an unequivocal Congressional command in the FY2012 Appropriations Act that USDA is to reinstate the inspection of horses for slaughter and transport interstate and internationally. USDA's action not only flouts Congress's clear intent in reinstating funding when it enacted the Consolidated and Further Continuing *Appropriations* Act for *Fiscal Year 2012* ("FY2012 Resolution")

1

(PUBLIC LAW 112–55—NOV. 18, 2011) and violates the directive of section 603 of the Federal Meat Inspection Act, but also abrogates the public's right to do business in an arbitrary and capricious manner that invokes review under the Administrative Procedure Act, 5 U.S.C. § 701-706 ("APA").

## Jurisdiction

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 704.

## Parties

3. Plaintiff Valley Meat Company, LLC is fully recognized and duly registered under the laws New Mexico Business engaged in the slaughter and processing of livestock for human consumption.

4. Defendant Tom Vilsack is the Secretary of Agriculture, and has ultimate responsibility for ensuring that agencies within the U.S. Department of Agriculture ("USDA") comply with the mandates of Congress and with requirements of the APA and FMIA.

5. Defendant Al Amanza is the Administrator of the Food Safety and Inspection Service ("FSIS"), an agency within USDA, and is responsible for authorizing the inspection of livestock for human consumption by supplying inspections and issuing grants of inspection to those business that meet the requirements to process livestock for human consumption . Adminstrator Almanza has ultimate responsibility for ensuring that the

FSIS complies with the mandates of Congress and does not act or fail to act in a manner that is arbitrary and capricious in contravention of the APA.

## Statutory and Regulatory Framework

A. **Administrative Procedure Act**

6. The APA requires, a reviewing court shall "hold unlawful and set aside agency action that it finds to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction [or] authority," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A). **The APA also directs a reviewing court to "compel agency action" that has been "unlawfully withheld or unreasonably delayed."** *Id*. **§ 706(1)**.

B. **Federal Meat Inspection Act**

7. The Federal Meat Inspection Act, 21 U.S.C. § 601 et seq. ("FMIA"), is a self-contained, comprehensive statutory inspection scheme that prohibits meat from covered species – including horses – from entering interstate commerce unless both pre-slaughter (ante-mortem) and post-slaughter (post-mortem) inspections are conducted pursuant to the FMIA. 21 U.S.C. § 603. Sections 603 and 604 of the FMIA require USDA inspection of animals, including horses, both before they may enter a slaughtering facility and after slaughter, to ensure that no part of a carcass determined to be "adulterated" passes into the human food supply. Section 603 of the FMIA makes clear that these inspectors shall be "appointed" by the Secretary of Agriculture. It provides that "[f]or the purpose of preventing the use in commerce of meat and meat food products which are adulterated, the Secretary shall cause to be made, by inspectors appointed for that purpose, an

examination and inspection of all amenable species before they shall be allowed to enter into any slaughtering . . . or similar establishment." Id. The term "amenable species" is defined as "those species subject to the provisions of the Act on the day before the date of the enactment of the [ ] Act," 21 U.S.C. § 601(w), which included "cattle, sheep, swine, goats, horses, mules, and other equines." 21 U.S.C. § 603. The FMIA also expressly requires that the costs of ante-mortem and post-mortem inspections "shall be borne by the United States." 21 U.S.C. § 695 (emphasis added). In short, the FMIA requires inspection for horse slaughter to be carried out under that Act, rather than under any other statute, and to be paid for by USDA itself out of federal appropriations.

## Facts Giving Rise to Plaintiffs' Claims for Relief

### A. FY 2012 Appropriations Act and Amendment

8. In recognition of the public and industry support for allowing the human slaughter of horse for human consumption, and responding to the June 2011 GAO report members of Congress introduced an Amendment to the FY2012 Appropriations Act for multiple agencies that specifically lifted the ban on USDA spending funds for the inspection of equine animals for the simple goal to again allow for the human slaughter horse.  A broad coalition of horse owners and the agriculture supported the reinstatement of funding because it addressed the well document concerns raised in the GAO report that when Congress passed the ban in 2006 that the ban coupled with economic down turn of 2008 had ultimately resulted in far greater neglect and inhumane treatment to horses themselves and had decimated the horse industry in general.

### B. USDA's Failure to Act Upon Amendment Passed by Congress

9. Upon passage of the FY 2012 Resolution which reinstituted funding for equine inspection for slaughter USDA issued several statements that affirmed that upon the appropriate application and completion of the regulatory requirements that they could immediately provide the inspections necessary for the slaughter of horse for human consumption and inspection.  USDA made repeated statements to Plaintiff and to the public at large that they could immediately provide inspections now that funding had been reinstituted.

10. USDA repeatedly conveyed to Plaintiff the necessary requirements and assured Plaintiff once they had completed the same that they would be issued a Grant of Inspection.

11. Plaintiff did meet all of the requirements and necessary walk-through examination as dictated by USDA.

12. In the spring of 2012 USDA altered its stance on this issue due to political and special interest pressure, effectively allowing the issue to become politicized.  The evidence will show a marked change in cooperation of USDA with Plaintiff and sudden change in availability of USDA to be able to issue a Grant of Inspection as well provide inspection of equine animals for slaughter for human consumption.

13. In the spring and early summer of 2012, Plaintiff completed the necessary requirements, namely an approved HAACP, SSOP and drug residue testing program.  These required plans were all completed with the assistance of USDA and other experts in that field.  At the time that these requirements were completed the evidence will show that USDA engaged in a communication shell game as to who had the power to give final approval culminating in the response that the issue of drug residue testing has been

referred back to the Congressional Affairs office of USDA in Washington, D.C.  The evidence will also show at that time it became the stance of USDA responding again to political pressure instead of science and the directives of Congress that because horses had not been slaughtered for a number of years that FSIS would have to create new protocols for evaluating drug residue testing programs.

14. The evidence will show that even though USDA knew since early December that Plaintiff was taking the required steps and planned to open a horse facility that they did not act on preparing their programs to begin inspecting for horse until late June of 2012 at which point they had effectively exhausted all other excuses for not providing inspections and instead turned creating their un-preparedness as legitimate reason for failing to issue Plaintiff their Grant of Inspection.

15. USDA officials have repeatedly made statements that this issue is "political" and relied upon that as the reason that they have failed to act according to the directives of Congress thus arbitrarily and capriciously failing to act in violation of the APA.

**C.  Plaintiff Has Suffered Monetary Loss**

16. In reliance upon the statements of USDA that they would be able to receive a Grant of Inspection for equine animals if they complied with the necessary requirements, Plaintiff has halted its other livestock slaughter operations resulting in the loss of considerable monies.

17. In reliance upon the statements of USDA, Plaintiff expended over $20,000.00 fitting the plant to conform to the requirements of a horse processing facility.

18. Plaintiff has suffered economic loss of over hundreds of thousands of dollars that they would have received but for the failure of USDA to issue its' Grant of Inspection.

**Plaintiffs' Claims for Relief**

**Claim One – Violation of The Administrative Procedure Act, 5 U.S.C. § 706**

19. By failing to act or by failing to timely act USDA; (1) interefered with horse slaughter despite an unequivocal Congressional command designed to allow horse slaughter, (2) violates the requirements and purpose of both the reinstating of funding under the FY2012 resolution and the FMIA, and (3) ignores the Constitutional separation of powers principle by which Congress makes the laws and the executive branch carries them out, USDA has abused its discretion, and acted arbitrarily and capriciously and not in accordance with law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

**WHEREFORE**, plaintiffs request that the Court issue an Order:

1. Declaring that the USDA's failure to issue Grants of Inspection of equine animals for human consumption is arbitrary and capricious, and not in accordance with the Administrative Procedure Act, FY2012 Appropriations Act, and the Federal Meat Inspection Act.

2. Command USDA to immediately issue the appropriate Grant of Inspection to Plaintiff;

3. Awarding plaintiffs their costs and reasonable attorneys' fees; and

4. Awarding plaintiffs any other relief that is just and proper.

Respectfully submitted,

  /s/ A. Blair Dunn         ,

A. Blair Dunn, Esq.
*Counsel for Valley Meat Co. LLC*
6605 Uptown Blvd NE, Ste 280
Albuquerque, NM 87110
*abdunn@ablairdunn-esq.com*
(T): 505-881-5155
(F): 505-881-5356